MICHAEL D. DAVIDSON, ESQ.
Nevada Bar No. 000878
MATTHEW T. DUSHOFF, ESQ.
Nevada Bar No. 004975
**KOLESAR & LEATHAM**
400 South Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
Telephone: (702) 362-7800
Facsimile: (702) 362-9472
E-Mail: mdavidson@klnevada.com
mdushoff@klnevada.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| PAUL THOMPSON, | CASE NO. 2:18-cv-01863-GMN-VCF |
| Plaintiff, | |
| vs. | **TREASURE COAST BULLION GROUP, INC.'S, WORTH GROUP INC.'S, AND MATTHEW JOHN KEHOE'S MOTION TO DISMISS OR ALTERNATIVELY TO COMPEL ARBITRATION** |
| TREASURE COAST BULLION GROUP, INC., WORTH GROUP, INC., MATTHEW JOHN KEHOE and DOES 1-10 and ROES 1-10, inclusively, | |
| Defendants. | |

Treasure Coast Bullion Group, Inc., Worth Group, Inc., and Matthew John Kehoe file this Motion to Dismiss Paul Thompson's Complaint, or Alternatively To Compel Arbitration.

Mr. Thompson claims Treasure Coast Bullion, Worth Group, Mr. Kehoe, and others defrauded him through a series of gold and silver bullion transactions. He is suing the defendants for: breach of fiduciary duty (Count I); negligent misrepresentations and omissions (Count II); negligence (Count III); violating the Nevada Deceptive Trade Practices Act (Count IV); and exploiting an older or vulnerable person (Count V).

///

///

///

///

Because Mr. Thompson and all three defendants are parties to a written arbitration clause which governs this dispute, the Court should either dismiss this case so the parties can arbitrate, or compel arbitration and stay this case until the arbitration proceedings conclude.

DATED this 2nd day of October, 2018.

**KOLESAR & LEATHAM**

By */s/ Michael D. Davidson, Esq.*
    MICHAEL D. DAVIDSON, ESQ.
    Nevada Bar No. 000878
    MATTHEW T. DUSHOFF, ESQ.
    Nevada Bar No. 004975
    400 South Rampart Boulevard, Suite 400
    Las Vegas, Nevada 89145

*Attorneys for Defendants*

## I. BACKGROUND

### A. The Allegations in the Complaint.

Mr. Thompson makes the following allegations in the Complaint:

Beginning in late summer 2017, Mr. Kehoe held a series of telephone calls with Mr. Thompson. Mr. Kehoe said he worked for Treasure Coast Bullion Group and convinced Mr. Thompson to purchase gold and silver bullion on margin. From September 2017 through May 2018, Mr. Thompson purchased $6.8 million of gold and silver bullion. *See* Complaint ¶¶ 7, 15-16.

According to Mr. Thompson, Mr. Kehoe misrepresented important facts about the transaction costs of these purchases, and the relative risk and safety of gold and silver markets. For example, Mr. Thompson claims Mr. Kehoe failed to disclose that: (1) Treasure Coast and Worth Group "intended to use margin to excessively leverage any money [Mr. Thompson] invested, thereby making it virtually impossible for [Mr. Thompson] to make any money after paying storage costs, premiums and interest;" (2) "Worth and its principals Andrew Wilshire and Eugenia Mildner had been permanently barred by the CFTC and fined $1.2 million in 2016 for charging improper fees to customers; and (3) FINRA had suspended Mr. Kehoe for sales practice violations. *See* Complaint, ¶¶ 22-23.

Based on these allegations, Mr. Thompson is suing Treasure Coast, Worth Group, and Mr. Kehoe for: breach of fiduciary duty (Count I); negligent misrepresentations and omissions (Count II); negligence (Count III); violating the Nevada Deceptive Trade Practices Act (Count IV); and exploiting an older or vulnerable person (Count V).

The Court should dismiss the complaint because all of these claims are subject to a written arbitration agreement.

**B.     The Arbitration Agreement.**

In order to open an account with Worth Group and Treasure Coast, Mr. Thompson electronically executed an agreement with each company through the Treasure Coast Bullion website. *See* Affidavit of David Love, ¶ 3-19, 21-23. A copy of the Affidavit is Attached as **Exhibit A** and incorporated into this memorandum.

In essence, by working his way through the website's prompts, Mr. Thompson: (1) reviewed all of the terms and conditions in the contracts for Treasure Coast Bullion and Worth Group, (2) acknowledged that he understood and agreed to the terms and conditions of both contracts (including the arbitration clauses), (3) completed both contracts, and (4) provided an electronic signature for both contracts. *See* Affidavit of David Love, **Exhibit A**, ¶¶ 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21-23.

In fact, Mr. Thompson would not have been able to complete the application process (including signing the contract) for either contract unless he continually activated buttons which required him to provide or ratify all of the information in the contracts and the terms and conditions of the contracts. *See* Affidavit of David Love, **Exhibit A**, ¶¶ 4, 6, 7, 9, 12, 16, 18.

Moreover, with regard to both contracts, Mr. Thompson demonstrated his understanding that by clicking the applicable boxes, he was indicating that he had read and understood the applicable terms, and that he was agreeing to and accepting the applicable terms. The Treasure Coast Bullion and Worth Group contracts each included the following disclosure:

> You hereby consent and agree that your use of a key pad, mouse or other device to select an item, button, icon or similar act/action while using any electronic service we offer; or in accessing or making any transactions regarding any agreement, acknowledgment, consent, terms, disclosures or conditions constitutes your signature, acceptance and agreement as if actually signed by you

1  in writing. Further, you agree that no certification, authority or other third party verification is necessary to validate your electronic signature; and that the lack of such certification or third party verification will not in any way affect the enforceability of your signature or any resulting contract between you and Treasure Coast Bullion Group, Inc.

By clicking CONTINUE below, I hereby represent that the information provided by me on the Customer Profile section of this packet is true and correct. I further represent that I will notify Treasure Coast Bullion Group, Inc. of any material changes. Treasure Coast Bullion Group, Inc. reserves the right, but has no duty, to verify the accuracy of information provided, and to contact such bankers, brokers and others as it deems necessary.

I acknowledge that this is a legally binding contractual agreement. I have read it carefully, and by submitting this agreement application, I agree to be bound by every term and condition. No modification of this Agreement is valid unless accepted by Treasure Coast Bullion Group, Inc. in writing. I confirm that I have not made any alterations or deletions to this agreement or any such documents from the original forms posted on the website. In the event that there are any alterations or deletions to this agreement or any such documents such alteration and deletions shall not be binding on you and said original forms shall govern Trader account relationship with Treasure Coast Bullion Group, Inc.

Mr. Thompson acknowledged these terms by clicking a box next to the following disclosure which was at the bottom of the same page:

**I hereby warrant that the foregoing answers are true and correct to the best of my knowledge and that I have not been instructed by anyone to misrepresent any fact herein. Treasure Coast Bullion Group, Inc. may rely on the above information in determining whether to buy or sell precious metals from or to me or to extend me any financing.**

*See* Affidavit of David Love, **Exhibit A**, ¶¶ 7-8, 14-15.

Through this process, Mr. Thompson specifically agreed to submit all of his claims against Treasure Coast Bullion, Worth Group, and their employees to mandatory binding arbitration before JAMS. The Treasure Coast Bullion Account Agreement arbitration clause says:

a. **Arbitration of Claims.**  The parties agree that any and all disputes, claims or controversies arising out of or relating to any transaction between them or to the breach, termination, enforcement, interpretation, validity or the alleged unconscionability of any part of this Agreement shall be subject to and governed by the Federal Arbitration Act and shall be submitted to final and binding arbitration before JAMS, or its successor, in Palm Beach County, Florida.  The parties also agree that this Agreement and the transactions entered into pursuant to it are commercial in nature (i.e., for investment) and do not involve

KOLESAR & LEATHAM
400 S. Rampart Boulevard, Suite 400
Las Vegas, Nevada 89145
TEL: (702) 362-7800 / FAX: (702) 362-9472

      b. **Additional Participants in this Agreement to Arbitrate.** All shareholders, officers and directors of TREASURE COAST, and all employees, representatives, agents and affiliates of TREASURE COAST, past, present or future, are beneficiaries of, and participants in, this arbitration agreement. They will have the same rights and obligations under this arbitration agreement as the parties, to the extent that these arbitration agreement beneficiaries are named as respondents in any dispute, claim or controversy subject to or arising from this Agreement, or could have been so named.

consumer transactions (i.e., transactions entered into for personal, family or household purposes) under JAMS rules or otherwise.

Affidavit of David Love, **Exhibit A**, ¶ 21.

The Worth Group Loan, Security and Storage Agreement contains an arbitration clause which is virtually identical. It says:

      a. **Arbitration of Claims.** The parties agree that any and all disputes, claims or controversies arising out of or relating to any transaction between or among them or to the breach, termination, enforcement, interpretation, validity or alleged unconscionability of any part of this Agreement shall be subject to and governed by the Federal Arbitration Act and shall be submitted to final and binding arbitration before JAMS, or its successor, in Palm Beach County, Florida. The parties also agree that this Agreement and the transactions entered into pursuant to it are commercial in nature (i.e., for investment) and do not involve consumer transactions (i.e., transactions entered into for personal, family or household purposes) under JAMS rules, or otherwise.

      b. **Additional Participants in this Agreement to Arbitrate.** All shareholders, officers and directors of WORTH, and all employees, representatives, agents and affiliates of WORTH, past, present or future, are beneficiaries of, and participants in, this arbitration agreement. They will have the same rights and obligations under this arbitration agreement as the parties, to the extent that these arbitration agreement beneficiaries are named as respondents in any dispute, claim or controversy subject to or arising from this Agreement, or could have been so named.

Affidavit of David Love, **Exhibit A**, ¶ 22.

Mr. Thompson specifically acknowledged that he reviewed and understood these arbitration clauses. For example, the page which contained the terms and conditions of the Treasure Coast Bullion contract included the arbitration clause, and a second acknowledgement in bold:

> **I have carefully read and understand the foregoing.  I understand that I am agreeing to submit all disputes, claims and controversies arising out of, or relating to, my transactions with Treasure Coast Bullion Group, Inc. or this Agreement to binding arbitration before JAMS, which is a private dispute resolution procedure, as set forth in Section 14 above.  I understand that by agreeing thereto, I am also agreeing to pay JAMS administrative fees and arbitrators fees according to the terms of Subsection 14.d and to give up my rights to a jury trial of any claims. (See Section 14.k).**

Affidavit of David Love, **Exhibit A**, ¶¶ 5, 21.

Similarly, the Worth Group contract Terms and Conditions page included the arbitration provisions and would not allow Mr. Thompson to continue with the application process unless he scrolled through the entire agreement and then indicated that acknowledged and understood the Terms and Conditions.  *See* Affidavit of David Love, **Exhibit A**, ¶¶ 12, 22.

In light of this evidence, the Court should compel Mr. Thompson to arbitrate with all three defendants.  Given the allegations in Mr. Thompson's complaint, Treasure Coast and Worth Group have a written arbitration agreement with Mr. Thompson which covers this dispute.  The arbitration agreement also explicitly covers Mr. Kehoe because he is an employee of Treasure Coast.  *See* Affidavit of David Love, **Exhibit A**, ¶ 12.

## II. ARGUMENT

### A. Motions to Compel Arbitration.

The Federal Arbitration Act, 9 U.S.C. § 1, et seq. ("FAA") governs the interpretation and enforceability of arbitration provisions.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (noting that the FAA "[creates] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.").  Section 2 of the FAA directs:

> [a] written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction … shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Section 3 of the FAA requires federal courts to stay proceedings when an issue in the proceeding is referable to arbitration; and Section 4 directs courts to compel arbitration when one

party has failed to comply with an agreement to arbitrate. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) (*citing* 9 U.S.C. §§ 3-4).  Consequently, "[b]y its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original) (citing 9 U.S.C. §§ 3, 4).

In short, under the FAA, a district court must grant a motion to compel arbitration if it is satisfied that the parties actually agreed to arbitrate the dispute. *See e.g. Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) ("The preeminent concern of Congress in passing the Act was to enforce private agreements into which parties had entered, and that concern requires that we rigorously enforce agreements to arbitrate.").

Together, these provisions "manifest a liberal federal policy favoring arbitration agreements." *EEOC*, 534 U.S. at 829 (*quoting Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).  Consequently, Courts must remove all doubts concerning the scope of an arbitration provision in favor of arbitration. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999) (*citing* Moses H. Cone, 460 U.S. at 24-25).

When reviewing a motion to compel arbitration, a district court's role is limited to determining: (1) whether a valid agreement to arbitrate exists, and if it does, (2) whether the agreement encompasses the dispute at issue. *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719-20 (9th Cir. 1999).

When deciding whether the parties agreed to arbitrate any particular dispute, courts generally should apply ordinary state-law principles that govern the formation of contracts.  *See First Options of Chicago*, 514 U.S. 938, 944, 115 S. Ct. 1920, 131 L.Ed. 2d 985 (1995).  In this case, the parties agreed in their contracts that Florida law would apply. *See* Affidavit of David Love, **Exhibit A**, ¶¶ 21 (Exhibit 9), 22 (Exhibit 10).

Like all common-law jurisdictions, Florida recognizes that the "basic requirements" of a contract are "offer, acceptance, consideration and sufficient specification of essential terms."  *St. Joe Corp v. McIver*, 875 So. 2d 375, 381 (Fla. 2004).  The acceptance of these sufficiently

1  specified essential terms does not turn upon the subjective meeting of the parties' minds. *See*
2  *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985). Rather, the Florida Supreme Court
3  has explained that there is a simple objective test to determining whether an enforceable contract
4  exists: "The making of a contract depends … on [the parties] having said the same thing. *Id.*
5  (*quoting Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Financial Corp.*, 302 So. 2d
6  404, 407 (Fla. 1974)). In this regard, Florida law holds that "the language used in a contract is
7  the best evidence of the intent and meaning of the parties." *Boat Town U.S.A., Inc. v. Mercury*
8  *Marine Division of Brunswick Corp.*, 364 So. 2d 15, 17 (Fla. 4th D.C.A. 1978).

9  A "clickwrap" agreement (where a party must typically click an "I agree" box after being
10 presented with a list of terms and conditions of use) signifies this intent to "say the same thing,"
11 and is enforceable under Florida law. *See Herssein Law Grp. v. Reed Elsevier, Inc.*, No. 13-
12 23010-CIV, 2014 WL 11370412, at *1 n.1 (S.D. Fla. Apr. 16, 2014); *Segal v. Amazon.com, Inc.*,
13 763 F. Supp. 2d 1367, 1369 (S.D. Fla. 2011) ("In Florida and the federal circuits . . . clickwrap
14 agreements are valid and enforceable contracts.").

15 "The party resisting arbitration bears the burden of proving that the claims at issue are
16 unsuitable for arbitration." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 91
17 (2000).

**B.  The Arbitration Agreement Requires Mr. Thompson to Arbitrate His Claims With Worth Group.**

20 Given these principles, the Court should require Mr. Thompson to arbitrate his
21 disagreement with Worth Group.

22 First, as Mr. Love's Affidavit and the associated exhibits demonstrate in detail, Mr.
23 Thompson electronically executed a written arbitration agreement with Treasure Coast and
24 Worth Group.

25 These arbitration agreements clearly required him to resolve by "final and binding
26 arbitration before JAMS, or its successor, in Palm Beach County, Florida": "any and all disputes,
27 claims or controversies arising out of or relating to any transaction between [the parties] or to the
28 breach, termination, enforcement, interpretation, validity or the alleged unconscionability of any

part of this Agreement … ."

This term is standard and more than broad enough to cover all of the claims in the complaint. *See, e.g., AXA Equitable Life Insurance Company v. Infinity Financial Group, LLC*, 608 F. Supp. 2d 1330, 1344 (S.D. Fla. 2009) (describing a similar arbitration clause as "the 'prototypical broad' language which … leads to a presumption in favor of arbitration."); *See also Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 721 (9th Cir. 1999) ("Every court that has construed the phrase" arising in connection with" in an arbitration clause has interpreted that language broadly.  We likewise conclude that the language "arising in connection with" reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract.").

As an employee of Treasure Coast, Mr. Kehoe also enjoys the arbitration agreement's explicit protection.  The arbitration agreements say:

> All shareholders, officers and directors of WORTH, and all employees, representatives, agents and affiliates of WORTH, past, present or future, are beneficiaries of, and participants in, this arbitration agreement.  They will have the same rights and obligations under this arbitration agreement as the parties, to the extent that these arbitration agreement beneficiaries are named as respondents in any dispute, claim or controversy subject to or arising from this Agreement, or could have been so named.

> All shareholders, officers and directors of TREASURE COAST, and all employees, representatives, agents and affiliates of TREASURE COAST, past, present or future, are beneficiaries of, and participants in, this arbitration agreement. They will have the same rights and obligations under this arbitration agreement as the parties, to the extent that these arbitration agreement beneficiaries are named as respondents in any dispute, claim or controversy subject to or arising from this Agreement, or could have been so named.

As a result, under Florida law, Mr. Kehoe is a third party beneficiary and may compel arbitration. *See Florida Power and Light Co. v. Road Rock, Inc.*, 920 So. 2d 201, 203 (Fla. 4th D.C.A. 2006); *Aetna Causalty & Surety Company v. Jelac Corp.*, 505 So. 2d 37, 38 (Fla. 4th D.C.A. 9187) ("A third party is an intended beneficiary, and thus able to sue on a contract, only if the parties to the contract intended to primarily and directly benefit the third party.").

Along these lines, JAMS is a highly reputable provider of arbitration services.

Second, Mr. Holland's complaint leaves no doubt that an arbitrable issue exists.  Using the following theories, he has sued Treasure Coast, Worth Group, and Mr. Kehoe for improperly

gold and silver bullion transactions under the contracts: breach of fiduciary duty (Count I); negligent misrepresentations and omissions (Count II); negligence (Count III); violating the Nevada Deceptive Trade Practices Act (Count IV); and exploiting an older or vulnerable person (Count V).

All of these claims "aris[e] out of or relat[e] to [a] transaction between [the parties] or to the breach, termination, enforcement, interpretation, validity or the alleged unconscionability of any part of this Agreement."

Consequently, especially in light of the "liberal federal policy favoring arbitration agreements," the Court should compel arbitration in this matter.

## III.  CONCLUSION

For all of these reasons, the Court should grant Treasure Coast Bullion Group's and Worth Group's and Matthew Kehoe's Motion to Dismiss or in the Alternative to Compel Arbitration.

DATED this 2nd day of October, 2018.

**KOLESAR & LEATHAM**

By */s/ Michael D. Davidson, Esq.*
    MICHAEL D. DAVIDSON, ESQ.
    Nevada Bar No. 000878
    MATTHEW T. DUSHOFF, ESQ.
    Nevada Bar No. 004975
    400 South Rampart Boulevard, Suite 400
    Las Vegas, Nevada 89145

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Kolesar & Leatham, and that on the 2nd day of October, 2018, I caused to be served a true and correct copy of foregoing **TREASURE COAST BULLION GROUP, INC.'S, WORTH GROUP INC.'S, AND MATTHEW JOHN KEHOE'S MOTION TO DISMISS OR ALTERNATIVELY TO COMPEL ARBITRATION** in the following manner:

(ELECTRONIC SERVICE)  Pursuant to Rule 5-4 of the Local Rules of Civil Practice of the United States District Court for the District of Nevada, the above-referenced document was electronically filed on the date hereof and served through the Notice of Electronic Filing automatically generated by that Court's facilities.

*/s/ Kristina R. Cole*
An Employee of KOLESAR & LEATHAM